UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RIGOBERTO LOPEZ RAMOS,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

Case No. CV 14-775 JC

MEMORANDUM OPINION

## I.    SUMMARY

On February 5, 2014, plaintiff Rigoberto Lopez Ramos ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; February 6, 2014 Case Management Order ¶ 5.

///

///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5         **DECISION**

6         On October 13, 2009, plaintiff filed applications for Supplemental Security

7    Income and Disability Insurance Benefits.  (Administrative Record ("AR") 28,

8    249, 253).  Plaintiff asserted that he became disabled on October 1, 2004

9    (amended to June 14, 2005), due to epilepsy, diabetes, arthritis in the back, and

10   several back surgeries.  (AR 28, 86, 286).

11        The ALJ examined the medical record[2] and heard testimony from plaintiff

12   (who was represented by counsel and assisted by a Spanish language interpreter)

13   and a vocational expert on November 22, 2011.[3]  (AR 91-127).

14        On December 16, 2011, the ALJ determined that plaintiff was not disabled

15   through the date of the decision.  (AR 28-64).  Specifically, the ALJ found:

16   (1) plaintiff suffered from the following severe impairments:  seizure disorder,

17   arthralgias, chronic lumbago, history of lumbar spine fusion, history of Hepatitis

18   C, and diabetes mellitus (AR 60); (2) plaintiff's impairments, considered singly or

19   in combination, did not meet or medically equal a listed impairment (AR 60-61);

20

21        [1]The harmless error rule applies to the review of administrative decisions regarding

22   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing application
     of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner,

23   Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

24        [2]The ALJ noted at the hearing and in her decision that the medical record contains a very
     large number of duplicates.  (AR 46, 83, 88).

25

26        [3]Plaintiff initially appeared before the ALJ on March 29, 2011, but the hearing was
     postponed because counsel arrived 50 minutes late.  (AR 28, 74-80, 95).  On August 1, 2011, the

27   hearing was again postponed because plaintiff asserted that he was unable to speak English, but a
     Spanish language interpreter had not been scheduled because plaintiff had stated in his disability

28   report that he was able to "speak and understand English."  (AR 28, 81-90, 95, 285).

(3) plaintiff retained the physical residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[4] (AR 61); (4) plaintiff could not perform his past relevant work (AR 62); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically optical inserter, jewelry preparer, optical assembler, small products assembler, production assembler, and garment bagger (AR 63); and (6) plaintiff's allegations regarding his limitations were not fully credible (AR 61).

The Appeals Council denied plaintiff's application for review.  (AR 3).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[4]The ALJ determined that plaintiff (i) could lift and carry up to 20 pounds occasionally and 10 pounds frequently; (ii) stand and/or walk about six out of eight hours per day; (iii) sit about six out of eight hours per day; (iv) occasionally climb ramps, stairs, ladders, rope, and scaffolding; (v) occasionally balance, stoop, kneel, crouch, and crawl; and (vi) had a seizure disorder which required plaintiff to avoid exposure to unprotected heights, hazardous machinery, open flames, open water, and to not operate a motor vehicle.  (AR 61).  The ALJ also determined that plaintiff retained the "mental residual functional capacity" to (i) understand, remember and carry out simple instructions; (ii) respond appropriately to supervision, co-workers, and usual work situations; and (iii) deal with changes in a routine work setting and use of judgment.  (AR 56-57).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

///

4

1

### B.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.     The ALJ Properly Evaluated Plaintiff's Credibility

#### 1.     Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could ///

reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (e.g., daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p.[5] Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical

---

[5]Although they do not carry the "force of law," Social Security Rulings are binding on ALJs. See 20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation marks omitted). Such rulings "reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Molina v. Astrue, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (citations and internal quotation marks omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings).

1  evidence is a factor that the ALJ can consider in his or her credibility assessment.

2  Burch, 400 F.3d at 681.

3       Assessment of credibility and resolution of conflicts in the testimony are

4  solely the Commissioner's functions.  Greger, 464 F.3d at 972.  Accordingly, if the

5  ALJ's interpretation of the claimant's testimony is reasonable and is supported by

6  substantial evidence, it is not the court's role to "second-guess" it.  Rollins v.

7  Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

8              **2.    Analysis**

9       Preliminarily, since the record contains evidence of plaintiff's malingering,[6]

10  the ALJ was not required to provide clear and convincing reasons for rejecting any

11  of plaintiff's testimony.  See Carmickle v. Commissioner of Social Security

12  Administration, 533 F.3d 1155, 1160 (9th Cir. 2008).  Even assuming, for the sake

13  of argument, that plaintiff was not malingering, a remand or reversal is not

14  warranted since the ALJ provided several clear and convincing reasons for

15  discrediting plaintiff's subjective complaints.

16       First, the ALJ properly discounted the credibility of plaintiff's subjective

17  complaints based on internal conflicts within plaintiff's own statements and

18  testimony.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th

19  Cir.), as amended on rehearing (1997) (in weighing plaintiff's credibility, ALJ

20  may consider "inconsistencies either in [plaintiff's] testimony or between his

21  testimony and his conduct").  For example, plaintiff testified, in part, that (i) in a

22  "typical 24-hour day" he spends "between 15 to 17 hours" lying down (AR 103);

23  (ii) most days he is either in the hospital or at home very depressed (AR 107);

24  (iii) he cannot stand more than 5-10 minutes at a time without resting, cannot walk

25  more than 30 minutes, and sometimes cannot walk at all (AR 104); (iv) he does

26

27       [6]See, e.g., AR 422, 476 (Agreed Medical Examiner noting that plaintiff's responses to
psychological testing were "magnified and exaggerated" and that "[m]alingering has to be

28  considered").

7

few "enjoyable activities" except eat out, grocery shop with his wife, and "sometimes" go to the park or for a walk with his sons. (AR 109). In contrast, on various occasions plaintiff told Dr. Myron L. Nathan, a psychiatric Agreed Medical Examiner for plaintiff's workers' compensation case, among other things, that plaintiff (i) walks three times a week or more for up to 35-40 minutes at a time and can walk 15-20 minutes without any difficulty with the use of a cane (AR 35, 37, 416, 472), and/or exercises 30-40 minutes after dinner daily (AR 36, 804); (ii) "will work in his yard" during the day, play with his granddaughter/change her diapers, occasionally wash dishes, rake the yard, and fold clothes (AR 37, 413); (iii) drives his son home from school two to three times a week, and drives his daughter to work two days a week (AR 413); (iv) goes to the swap meet with his wife and son (AR 35, 470-71); (v) has collected $12,000 in model cars and on one occasion spent $600 on model cars at a swap meet with his son (AR 35, 470-71); (vi) coaches his son's track team two to three times a week for up to an hour and a half each time (AR 38, 432); and (vi) joined a men's car club and would go to car shows (AR 35, 470). Plaintiff also testified that since June 2005 he has not taken any trips or vacations except in September 2011 when his grandmother died (AR 110) and that he does not take public transportation (AR 109), but, as the ALJ noted, plaintiff apparently told Dr. Nathan that since November 2004 he had made 15-20 trips to Mexico (the most recent in early May 2006) and his wife "generally drive[s]," and that plaintiff flew to Chicago alone for eleven days in late 2005 (AR 35, 463). In addition, although plaintiff testified that he spends "very little" time watching television because he does not like it (AR 110), and that he is unable to sit long enough to watch even a 30 minute television show (AR 104), plaintiff told Dr. Nathan that he "watches television," sometimes "for three or four hours a day." (AR 35, 37, 412, 471).

Second, the ALJ properly discounted the credibility of plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct. See

1   Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between
2   the claimant's testimony and the claimant's conduct supported rejection of the
3   claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999)
4   (inconsistencies between claimant's testimony and actions cited as a clear and
5   convincing reason for rejecting the claimant's testimony).  For example, as the
6   ALJ noted, secret video tape recordings were made of plaintiff ("sub-rosa films")
7   based on suspicion that plaintiff's complaints in his workers' compensation case
8   were unreliable.  (AR 34, 62, 448-57).  Contrary to plaintiff's allegations of
9   disabling symptoms, plaintiff was seen on the films engaging in multiple daily
10  activities (i.e., doing yard work, bending down, unhooking a trailer, spray
11  painting, shopping, washing a car, carrying plants).  (AR 34, 62, 448-57, 1558-
12  59).

13          Third, the ALJ properly considered plaintiff's failure to "seek treatment or
14  to follow a prescribed course of treatment" as impacting credibility.  See Smolen
15  v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, as the ALJ noted, the
16  medical records reflect a long history of plaintiff's failure to comply with the
17  medication and/or treatment he was prescribed for seizures.  (AR 40, 61) (citing
18  Exhibit 16F at 42 [AR 997] (seizure medication not at therapeutic levels); Exhibit
19  53F at 66 [AR 4710] (plaintiff reported missing some of his medication prior to
20  having a seizure); Exhibit 60F at 67 [AR 5031] (same)).  While, as plaintiff notes,
21  an ALJ may not reject symptom testimony where a claimant provides "evidence of
22  a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations
23  omitted), plaintiff has presented no such evidence.

24          Fourth, as the ALJ noted, the "sub-rosa films" also showed intentional
25  "symptom exaggeration and magnification [by plaintiff] when outside [a] doctor's
26  office."  (AR 34, 37, 452, 1558-60).  The ALJ was entitled to consider such
27  evidence in determining whether plaintiff's overall claim of disabling symptoms
28  should be believed.  See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (citations omitted); Fair, 885 F.2d at 604 n.5 ("[I]f a claimant . . . is found to have been less than candid in other aspects of his testimony, that may be properly taken into account in determining whether or not his claim of disabling pain should be believed.").

Finally, while plaintiff argues that the ALJ provided certain other reasons for discounting plaintiff's credibility that were not "clear and convincing" (*i.e.*, unexplained failure to seek mental health treatment) (Plaintiff's Motion at 12), the Court finds any such errors to be harmless. As discussed above, the remaining reasons identified by the ALJ for discrediting plaintiff are supported by substantial evidence and any such errors would not have negated the validity of the ALJ's ultimate credibility determination in this case. See Molina, 674 F.3d at 1115 (citations omitted) (Where some reasons supporting an ALJ's credibility analysis are invalid, the error is harmless if (1) the ALJ provided other valid reasons supported by the record; (2) "there remains substantial evidence supporting the ALJ's decision"; and (3) the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion.") (citations and quotation marks omitted).

Accordingly, a remand or reversal is not warranted on this basis.

///
///
///
///
///
///
///
///

10

1   **B.**  **The ALJ Properly Evaluated the Severity of Plaintiff's**
2   **Impairments**
3       **1.**  **Pertinent Law**
4       At step two of the sequential evaluation process, plaintiff has the burden to
5   present evidence of medical signs, symptoms, and laboratory findings[7] that
6   establish a medically determinable physical or mental impairment that is severe,
7   and that can be expected to result in death or which has lasted or can be expected
8   to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420
9   F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3),
10  1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1520, 416.920.  Substantial evidence
11  supports an ALJ's determination that a claimant is not disabled at step two where
12  "there are no medical signs or laboratory findings to substantiate the existence of a
13  medically determinable physical or mental impairment."  Id. (quoting SSR 96-4p).
14      Step two is "a de minimis screening device [used] to dispose of groundless
15  claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment or
16  combination of impairments can be found "not severe" only if the evidence
17  establishes a slight abnormality that has "no more than a minimal effect on an
18  individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir.
19  2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.
20  1988) ("Despite the deference usually accorded to the Secretary's application of
21  regulations, numerous appellate courts have imposed a narrow construction upon
22  the severity regulation applied here.").
23  ///
24

25      [7]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can
26  be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"  Ukolov v.
    Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).  A "symptom" is "an
27  individual's own perception or description of the impact of his or her physical or mental
    impairment(s)[.]"  Id. (quoting SSR 96-4p); see also 20 C.F.R. §§ 404.1528(a)-(b),
28  416.928(a)-(b).

### 2.     Failed Back Surgery Syndrome

Plaintiff contends that a reversal or remand is warranted because the ALJ did not find "failed back surgery syndrome" to be a severe impairment at step two. (Plaintiff's Motion at 15-16).  The Court disagrees.

In short, plaintiff has not shown that "failed back surgery syndrome" is a "medically determinable physical impairment" – *i.e.*, an "anatomical [or] physiological . . . abnormalit[y]" that can be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added); Ukolov, 420 F.3d at 1005 (citations omitted). Plaintiff does not plausibly show that the particular physical signs or limitations he cites are caused by the diagnosed syndrome.  (Plaintiff's Motion at 16) (citing AR 61, 165, 416, 551, 617-18, 878, 1504, 2511-20, 3727, 4824, 5035).  Mere diagnosis of a physical condition is insufficient to establish a severe impairment at step two.  See, e.g., Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1982). Ultimately, the arguments, medical records, and Internet articles cited in plaintiff's at most suggest that "failed back surgery sydrome" is simply a term for referring to chronic pain that persists after unsuccessful back surgery.  (Plaintiff's Motion at 16 and n.4).  Nonetheless, subjective pain alone is insufficient to establish the existence of a severe medical impairment at step two.  See 20 C.F.R. §§ 404.1508, 416.908; Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p.

Accordingly, a remand or reversal is not warranted on this basis.

### 3.     Major Depressive Disorder

Plaintiff contends that a reversal or remand is warranted because the ALJ failed to find "major depressive disorder" to be a severe mental impairment at step two.  (Plaintiff's Motion at 15-18).  Specifically, plaintiff argues that the ALJ's findings at step two are erroneous primarily because the ALJ improperly evaluated the opinions of Dr. Nathan and Dr. Nick De Los Reyes, a psychologist for

///

1  plaintiff's workers' compensation case.  (Plaintiff's Motion at 17-18).  The Court

2  disagrees.

3      At step two, when determining whether a plaintiff's mental impairment is

4  severe, an ALJ must evaluate the four broad functional areas known as "paragraph

5  B" criteria, namely (1) activities of daily living; (2) social functioning;

6  (3) concentration, persistence, or pace; and (4) episodes of decompensation.

7  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  If the degree of limitation in the

8  first three functional areas is "none" or "mild," and there are no episodes of

9  decompensation, a plaintiff's mental impairment is generally found "not severe"

10 unless there is evidence indicating a more than minimal limitation in the plaintiff's

11 ability to perform basic work activities.[8]  See 20 C.F.R. §§ 404.1520a(d)(1),

12 416.920a(d)(1).

13     Here, the ALJ determined that plaintiff had mild restrictions in activities of

14 daily living, social functioning, and concentration, persistence, and pace, and no

15 repeated episodes of decompensation.  (AR 56).  Therefore, the ALJ properly

16 concluded that plaintiff did not have a severe mental impairment.  See 20 C.F.R.

17 §§ 404.1520a(d)(1); 416.920a(d)(1).  Substantial medical evidence supports the

18 ALJ's conclusion.  The ALJ's findings essentially mirror the state-agency

19 reviewing psychiatrist's assessment of the "paragraph B" criteria – which

20 assessment is consistent with the findings of the state-agency examining

21 psychiatrist (i.e., that plaintiff "does not have any impairment [in] functioning

22 from any psychiatric disorder") and is consistent with the record medical evidence.

23 (AR 40, 52-56) (citing, in part, Exhibits 27F [AR 2913-19]; 28F [AR 2920-22];

24 29F [AR 2923-33]).  The opinions of the state-agency examining psychiatrist were

25 supported by the doctor's independent examination of plaintiff, and thus, without

26 ────────────────

27 [8]Basic work activities include:  (1) understanding, carrying out, and remembering simple
   instructions; (2) responding appropriately to supervision, co-workers and usual work situations;

28 and (3) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

more, constituted substantial evidence supporting the ALJ's findings at step two. See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion based on independent examination of claimant constituted substantial evidence supporting ALJ's findings) (citations omitted).  The opinions of the state-agency reviewing psychiatrists were also substantial evidence supporting the ALJ's findings since they are consistent with the examining psychiatrist's opinions and underlying independent examination, as well as other medical evidence in the record.  See id. (opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

The opinions of Dr. De Los Reyes and the psychiatric Agreed Medical Examiner do not undercut the ALJ's findings at step two.  As the ALJ suggested, Dr. De Los Reyes' opinions regarding plaintiff's mental limitations mostly rely on plaintiff's subjective reports of significant symptoms, which the examiner's objective psychological testing of plaintiff did not support.  (AR 40, 41) (citing Exhibit 25F at 7 [AR 2512] (Dr. De Los Reyes noting that "[the objective] psychological testing results did not provide the best support to [plaintiff's reported] symptoms"); Exhibit 38F at 20-21 [AR 3502-03] (questioning validity of Dr. De Los Reyes' opinions, in part, because "no medical records [were] reviewed at the time of [plaintiff's] examination," "[t]he laundry list of emotional symptoms were never described in regard to severity or frequency," "an in-depth examination did not occur nor were the appropriate questions asked," plaintiff gave inconsistent statements, and objective testing appeared incomplete or invalid)). The ALJ also rejected the opinions of the psychiatric Agreed Medical Examiner because they were generally based on invalid objective testing (due to plaintiff's

14

"magnified and exaggerated [] responses") and subjective complaints that were themselves inconsistent with plaintiff's other statements during examinations that he was able to engage in a "wide array of activities of daily living." (AR 34-36, 41-42, 53-54, 407-506, 3483-3562). The ALJ properly evaluated the foregoing opinions and, to the extent she rejected the opinions, the ALJ did so based on specific and legitimate, clear and convincing reasons supported by substantial evidence. Ukolov, 420 F.3d at 1005 ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.") (citation omitted); SSR 96-4p at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."). For the reasons discussed above, the opinions of the state-agency examining and reviewing psychiatrists were substantial evidence that supported the ALJ's rejection of the two workers' compensation psychiatrists. Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041. While plaintiff suggests other medical records demonstrate that his mental impairments have more than a minimal effect on his ability to work, this Court will not second-guess the ALJ's reasonable interpretation that they do not, even if such evidence could give rise to inferences more favorable to plaintiff.

        Accordingly, a remand or reversal is not warranted on this basis.

## C.    The ALJ Properly Evaluated the Opinions of Plaintiff's Workers' Compensation Agreed Medical Examiner

        Dr. Alan Sanders, an orthopedic Agreed Medical Examiner for plaintiff's workers' compensation case, opined, in pertinent part, that plaintiff would be limited to "semi-sedentary" work ("Dr. Sanders' Opinion"). (AR 1562, 3729). Plaintiff essentially argues that the ALJ improperly evaluated Dr. Sanders'

///

1   Opinion.  (Plaintiff's Motion at 18-19) (citing AR 3727, 3729).  A reversal or

2   remand is not warranted on this basis.

3          In short, the ALJ did not, as plaintiff appears to suggest (Plaintiff's Motion

4   at 18-19), reject Dr. Sanders' Opinion.  To the contrary, at the hearing the ALJ

5   posed a hypothetical question to the vocational expert which not only included Dr.

6   Sanders' Opinion, verbatim (*i.e.* "[W]ith regard to work restrictions, [plaintiff]

7   essentially would be limited to greater than semi-sedentary work."), but also

8   appropriately defined the term "semi-sedentary work" as it is used in the workers'

9   compensation context (*i.e.*, "[the] ability to do work approximately 50 percent of

10  the time in a sitting position and approximately 50 percent of the time in a

11  standing or walking position, with a minimum of demands for physical effort,

12  whether standing, walking or sitting").  (AR 58, 119) (quoting Exhibit 17F at 15

13  [AR 1506]); <u>see generally</u> <u>Booth v. Barnhart</u>, 181 F. Supp. 2d 1099, 1104 (C.D.

14  Cal. 2002) (ALJ must consider medical opinion issued in workers' compensation

15  context and "translate" terms of art used in such medical opinions into

16  corresponding Social Security terminology) (citations omitted).  In addition, the

17  ALJ's decision also expressly accounted for Dr. Sanders' Opinion in assessing

18  plaintiff's residual functional capacity.  (AR 52).

19         As plaintiff notes, the Administration has stated that "[u]nskilled types of

20  jobs are particularly structured so that a person cannot ordinarily sit or stand at

21  will."  SSR 83-12.  The next sentence in the same Social Security Ruling,

22  however, states that a vocational expert should be consulted regarding the

23  vocational implications of unusual sit/stand limitations – which is precisely what

24  the ALJ did here.  Moreover, as the ALJ noted, here the vocational expert opined

25  that there would be work that plaintiff (or a hypothetical individual with the same

26  characteristics as plaintiff) could still do despite being limited to sitting 50 percent

27  of the time and standing/walking 50 percent of the time – specifically, several light

28  jobs that would "allow for intermittent sitting and standing at will [] as long as the

16

person stays within the work station and doesn't leave the work station." (AR 58) (citing AR 120-21).  See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony.  Thus, no additional foundation is required.").

Accordingly, a remand or reversal is not warranted on this basis.

### D.  The ALJ's Findings at Step 5 Are Free of Material Error

Plaintiff contends that the ALJ erred at step five essentially because (1) the ALJ found that plaintiff "is able to speak and understand a simple conversation . . . and also can read and write a simple message in English" (AR 30); (2) the DOT language requirements of the representative occupations identified by the vocational expert are inconsistent with plaintiff's inability effectively to communicate in English and the vocational expert did not acknowledge or address such inconsistency; and (3) the ALJ's hypothetical question (a) did not adequately account for limitations in a medical opinion plaintiff provided to the Appeals Council, and (b) did not accurately describe the limitations and restrictions related to plaintiff's seizure disorder.  (Plaintiff's Motion at 19-22).  A reversal or remand is not required on any of these grounds.

### 1.  Pertinent Law

At step five, the Commissioner must establish that there is other work that exists in "significant numbers" in the national economy that the claimant can perform, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); see also 20 C.F.R. § 416.960(b)(3); 42 U.S.C. § 423(d)(2)(A). Where a claimant suffers from only exertional impairments (i.e., "strength-related limitations"), the Commissioner must satisfy this burden by consulting the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly referred to as "the Grids").  Cooper v. Sullivan, 880 F.2d 1152, 1155 & n.6 (9th Cir. 1989) (citations omitted).  Where a claimant suffers

solely from nonexertional impairments (*e.g.*, "mental, sensory, postural, manipulative, and environmental limitations"), the Grids do not apply, and the ALJ must rely on other evidence. Id. at 1155 & n.7 (citations omitted); 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(e)(1).

Where, like here, a claimant has both exertional limitations that, on their own, do not support a finding of disability under the Grids, and nonexertional limitations that are "sufficiently severe"[9] such that the Grids are inapplicable, the ALJ must obtain evidence from a vocational expert. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir. 2006). The ALJ asks the vocational expert to identify representative jobs in the national economy that a hypothetical individual with the same characteristics as the claimant would be able to do. Tackett, 180 F.3d at 1101. The vocational expert's testimony in response may constitute substantial evidence of the claimant's ability to perform such jobs if the ALJ's hypothetical question included all of the claimant's limitations supported by the record. See Robbins, 466 F.3d at 886; Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

An ALJ may not rely on a vocational expert's testimony that deviates from pertinent occupation descriptions in the Dictionary of Occupational Titles

///

///

///

---

[9]At step five, a claimant's nonexertional limitations are considered "sufficiently severe" if they "significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (citations and quotation marks omitted). "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." Id.

("DOT")[10] unless the record contains "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  The ALJ must affirmatively ask the vocational expert whether his or her opinion contradicts information in the DOT, and must "obtain a reasonable explanation for any apparent conflict." Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p).  "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, [citation] or inferences drawn from the context of the vocational expert's testimony." Light, 119 F.3d at 793 (citations omitted).

All occupations listed in the DOT include a General Educational Development ("GED") component which describes the basic educational requirements of each particular job. See DOT, Appendix C - Components of the Definition Trailer ("DOT Appendix C"), 1991 WL 688702 (1991).  The GED scale is comprised of three discrete divisions, namely Reasoning Development, Mathematical Development, and Language Development. Id.  The Language Development division contains six levels ranging from Level 1 (i.e., the lowest level of language development) to Level 6 (the highest). Id.

As noted above, at step five an ALJ must take into account a claimant's education when evaluating what other work, if any, the claimant could do. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1564(a), 416.964(a).  One educational factor is the claimant's ability to communicate (i.e., "speak, read and understand") in English. See Chavez v. Department of Health and Human Services, 103 F.3d

---

[10]ALJs routinely consult the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1); 416.966(d)(1) (DOT is source of "reliable job information"); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("DOT raises [rebuttable] presumption as to [] job classification. . . .").

849, 852 (9th Cir. 1996) (citing 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5)).  A claimant who cannot effectively communicate in English is not *per se* disabled.[11] See, e.g., Pinto, 249 F.3d at 847.  Nonetheless, if the language requirements for a representative job identified by the vocational expert are inconsistent with the claimant's abilities, the ALJ must "definitively explain [the] deviation." Id. (noting requirement in connection with step four analysis); SSR 00-4P at *4 (If [a vocational expert's] . . . evidence appears to conflict with the DOT, the [ALJ must] obtain a reasonable explanation for the apparent conflict. . . [and] explain in the  . . . decision how he or she resolved the conflict"); see, e.g., Herrera v. Colvin, 2014 WL 3572227, *10 (C.D. Cal. July 21, 2014) (at step five ALJ was required to consider claimant's "inability to communicate in English" when determining what jobs were available to claimant) (citation omitted).

## 2.   The ALJ Properly Considered Plaintiff's Language Limitations

First, substantial evidence supports the ALJ's determination that plaintiff "is able to speak and understand a simple conversation in English and . . . can read and write a simple message in English."  (AR 28-30) (citing AR 96-97; Exhibit 1D at 1 [AR 249]; Exhibit 3E at 1 [AR 285]).  While plaintiff argues that other

---

[11]According to the DOT, every job in the national economy requires at least Language Development Level 1. Donahue v. Barnhart, 279 F.3d 441, 445 (7th Cir. 2002) ("It turns out that whoever wrote the Dictionary believes that basic literacy (defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences) is essential for every job in the economy. . . .") (citations omitted).  Consequently, where a claimant is unable to communicate in English, a vocational expert's opinion that the claimant could do any occupation necessarily deviates from the DOT. See, e.g., Clark v. Astrue, 2011 WL 1544204 *6 (C.D. Cal. Apr. 25, 2011) ("Someone who is illiterate obviously would be presumptively precluded from language level 1 and 2 jobs.").  Nonetheless, the DOT's "general" job descriptions do not apply in all situations. Massachi, 486 F.3d at 1153 n.17 (citing SSR 00-4P at *2-*3).  Thus, as noted above, in such cases the ALJ may rely on a vocational expert's testimony if the record contains "persuasive evidence to support the deviation." Pinto, 249 F.3d at 846 (citation omitted).

1  evidence in the record reflects that plaintiff is actually "unable to communicate in

2  English" (Plaintiff's Motion at 19-20), the Court will not second-guess the ALJ's

3  reasonable interpretation to the contrary, even if the evidence could support an

4  inference more favorable to plaintiff.

5        Even assuming, as plaintiff contends, that the language requirements of the

6  representative occupations identified by the vocational expert were inconsistent

7  with plaintiff's abilities, the record contains persuasive evidence to support any

8  such deviation.  At the hearing, the ALJ directed the vocational expert to explain

9  any discrepancy between his testimony and the DOT.  (AR 117).  Thereafter, the

10  vocational expert opined that plaintiff, or a hypothetical claimant with the same

11  characteristics as plaintiff, could perform the representative occupations of optical

12  inserter, jewelry preparer, optical assembler, small products assembler, production

13  assembler, and garment bagger.  (AR 118-21).  The ALJ affirmatively asked

14  whether the identified occupations could be performed by an individual "who is

15  not fluent in English."  (AR 119, 121).  The vocational expert responded that the

16  representative occupations were "non-language preclusive" – *i.e.,* they all could be

17  learned by "demonstration" only, and could be performed "without having to read,

18  write or speak [English at all]."[12]  (AR 119, 121).  The vocational expert was not,

19  as plaintiff suggests, required to identify the "resource" supporting the expert

20  testimony.  See Bayliss, 427 F.3d at 1218 (vocational expert's expertise sufficient

21  foundation for opinion testimony).

22        Accordingly, a remand or reversal on this basis is not warranted.

23  ///

24  ///

25  ///

26

27      [12]Such evidence soundly belies plaintiff's assertion that "the ALJ did not question the
Vocational Expert whether there were any conflicts between his testimony and the DOT."

28  (Plaintiff's Motion at 21).

1

2

3

**3.     Opinion Evidence Plaintiff Presented to the Appeals Council for the First Time Does Not Undermine the ALJ's Non-Disability Determination at Step Five**

4     In an April 26, 2010 report submitted for the first time to the Appeals

5     Council, Dr. Philip A. Sobol, a physician for plaintiff's workers' compensation

6     case, opined that plaintiff's "[r]eaching" abilities are "affected," plaintiff has

7     significant limitations in postural abilities, and could be expected to be absent

8     from work "about two days per month." ("Dr. Sobol's Opinions").  (AR 5037); see

9     generally Brewes v. Commissioner of Social Security Administration, 682 F.3d

10    1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence

11    in deciding whether to review a decision of the ALJ, that evidence becomes part of

12    the administrative record, which the district court must consider when reviewing

13    the Commissioner's final decision for substantial evidence."); see also Taylor v.

14    Commissioner of Social Security Administration, 659 F.3d 1228, 1231 (9th Cir.

15    2011) (courts may consider evidence presented for the first time to the Appeals

16    Council "to determine whether, in light of the record as a whole, the ALJ's

17    decision was supported by substantial evidence and was free of legal error")

18    (citation omitted).[13]  Plaintiff suggests that a reversal or remand is warranted

19    because Dr. Sobol's Opinion would undermine the ALJ's non-disability

20    determination at step five.  (Plaintiff's Motion at 21).  The Court disagrees.

21    Dr. Sobol's Opinions are in a check-the-box format, some parts of which are

22    even left blank.  (AR 5035-37).  Dr. Sobol did not provide an explanation of

23    specific clinical findings (i.e., results of objective testing or a physical

24    examination) upon which he relied to conclude that plaintiff's impairment affected

25    his reaching abilities.  (AR 5037).  Instead Dr. Sobol simply referred to his

26

27

28    [13]The record suggests that the April 26, 2010 report was provided to plaintiff's counsel well before the ALJ issued her decision.  (AR 5035-37).

1  response to an earlier question which described findings which appear to pertain to

2  plaintiff's "lumbar spine" and "lower extremities," "a sleep disorder,"[14] a "[jaw]

3  joint dysfunction," and "drowsiness" caused by medication.  (AR 5036) (citing AR

4  5037).  Neither Dr. Sobol nor plaintiff explains how such findings also support a

5  conclusion that plaintiff's ability to reach with his *upper* extremities was affected.

6  Dr. Sobol also did not specify the extent to which plaintiff's reaching ability was

7  limited.  While Dr. Sobol did state that plaintiff's ability to reach was "affected"

8  because plaintiff was "limited to semi-sedentary [] work" (AR 5037), such finding

9  appears to be based on Dr. Sanders' Opinion which, as discussed above, has

10  nothing to do with plaintiff's reaching abilities and, in any event, was accounted

11  for in the ALJ's decision.  (AR 52, 58, 119, 1562, 3729).  Plaintiff's currently

12  asserted, lay interpretation that Dr. Sobol imposed more significant reaching

13  limitations is insufficient to undermine the ALJ's implicit determination that

14  plaintiff could do jobs which require "frequent" reaching.  Cf. Gonzalez Perez v.

15  Secretary of Health & Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ

16  may not "substitute his own layman's opinion for the findings and opinion of a

17  physician").

18      Dr. Sobol also does not explain (and plaintiff points to no other evidence in

19  Dr. Sobol's treatment records which does) how the conclusory and cryptic

20  "findings" provided in the check-the-box opinions support any more significant

21  limitations than already accounted for in the ALJ's decision.  The ALJ would be

22  entitled to reject Dr. Sobol's Opinion on this basis alone.  See, e.g., Crane v.

23  Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ [] permissibly rejected [medical

24  evaluations] because they were check-off reports that did not contain any

25  explanation of the bases of their conclusions."); see also De Guzman v. Astrue,

---

27  [14]The ALJ determined, and plaintiff does not demonstrate otherwise, that there is no

28  evidence in the record which documents limitations from a sleep disorder that lasted 12 months or more.  (AR 52).

23

1   343 Fed. Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports

2   that d[o] not contain any explanation of the bases of their conclusions.'") (citing

3   id.); see also Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing

4   preference for individualized medical opinions over check-off reports); see also

5   Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's

6   opinion properly rejected where treating physician's treatment notes "provide no

7   basis for the functional restrictions he opined should be imposed on [the

8   claimant]").

9          Accordingly, a remand or reversal on this basis is not warranted.

10                 **4.    The ALJ Properly Considered Plaintiff's Seizure Disorder**

11         The ALJ included multiple seizure precautions in her residual functional

12  capacity assessment for plaintiff as well as in the hypothetical question the ALJ

13  posed to the vocational expert.  (AR 61, 121-32).  Plaintiff contends that the ALJ,

14  nonetheless, failed to account for certain other limitations related to plaintiff's

15  seizure disorder.  (Plaintiff's Motion at 21).  A reversal or remand is not required

16  on this basis.

17          As plaintiff correctly notes, in Dr. Sobol's Opinions submitted to the

18  Appeals Council, Dr. Sobol opined that plaintiff would be "absent two days per

19  month."  (Plaintiff's Motion at 21) (citing AR 5037).  As discussed above,

20  however, Dr. Sobol's conclusory, check-the-box opinions do not support imposing

21  seizure precautions beyond those found by the ALJ.

22          As plaintiff also notes, in an April 15, 2011 letter addressed "To Whom It

23  May Concern," Dr. William P. Miller, one of plaintiff's treating neurologists,

24  noted that plaintiff was currently having seizures "up to three times a week" ("Dr.

25  Miller's Statement").  (Plaintiff's Motion at 21) (AR 4849).  The ALJ properly

26  gave "no weight" to Dr. Miller's Statement, however, because Dr. Miller's letter

27  did not cite to any medical findings in the record which supported the statement,

28  and Dr. Miller's treatment records did not document any seizures of the alleged

frequency by anyone other than plaintiff himself.  (AR 48); see Bayliss, 427 F.3d at 1217 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Ukolov, 420 F.3d at 1005 (disability may not be based on symptoms alone) (citation omitted).

While plaintiff suggests that the evidence regarding his seizure disorder otherwise warranted more significant seizure precautions (Plaintiff's Motion at 21-22), the Court will not second guess the ALJ's reasonable conclusion that it did not.

Accordingly, a remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   January 30, 2015

_____
                                        /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

25